[Sac. No. 991.   Department One.—October 17, 1903.]

.JOHN F. LUMAN, Appellant, *v.* GOLDEN ANCIENT CHANNEL MINING COMPANY, Respondent.

Master and Servant—Reasonable Safety of Machinery—Burden of Proof.—In an action for injury to a servant from the fall of a bucket filled with dirt from hoisting machinery used in a mine, where there was evidence to show that the machinery was reasonably safe for the purpose intended, if used in an ordinary way, the burden of proof is upon the servant to show that it was so defective or inadequate as to make its use by the master negligent and culpable.

Id.—Support of Findings—Master not Negligent—Negligence of Fellow-Servant.—Where the court found that the machinery was not being maintained by the master in a negligent or unsafe condition, that the fall of the bucket was not caused by the breaking or giving away of any part of the machinery, that the machinery was constructed, and at all times maintained by him, in a safe and sound condition for the purposes for which it was used, and that the accident was caused by the negligence of a fellow-servant, a judgment for the defendant will not be disturbed where the evidence was sufficient to sustain the findings to the extent necessary to support the judgment.

Id.—Defects in Machinery—Negligence in Operation by Fellow-Servant—Proximate Cause of Injury—Support of Findings.—If it should be conceded that the machinery was defective in certain particulars claimed, the plaintiff could recover therefor only in the event that the defects were the proximate cause of the injury; and where the court finds, upon sufficient evidence, that the fall of the bucket was not caused by the negligent construction or maintenance of the machinery, but was caused by the negligence of a fellow-servant in operating the machinery, his negligence, and not the defective machinery, must be deemed the sole proximate cause of the injury.

Id.— Evidence — Testimony of Expert — Exclusion of Evidence — Opinion as to Safety.—Where a mining engineer was called as an expert witness, the exclusion of questions calling for testimony already fully given by him was not prejudicial; and when he had testified as to facts on which the court could decide the question as to the safety of the machinery and appliances, his opinion as to such safety was properly excluded.

Id.—Inadmissible Declarations of Brakeman and Mining Superintendent.—Declarations made by the brakeman who operated the machinery, and by the mining superintendent, which were no part of the *res gestæ*, but were made after the accident had occurred,

as to the cause, were not admissible against the defendant corporation.

ID.—IRRELEVANT EVIDENCE—CONTEMPLATED DEPTH OF SHAFT—EXPERIENCE OF SUPERINTENDENT.—Where the issues to be tried related to the safety of the machinery at the time of the accident, evidence as to what was the originally contemplated depth of the shaft, and as to experience of the mining superintendent before he undertook the work, was properly excluded as irrelevant.

APPEAL from a judgment of the Superior Court of Plumas County and from an order denying a new trial. C. E. McLaughlin, Judge.

The facts are stated in the opinion of the court.

Goodwin & Webb, for Appellant.

The fall of the bucket and the resulting injury made a *prima facie* case of negligence, and the burden is upon the defendant to overcome the plaintiff's case by a preponderance of evidence. (*Judson* v. *Giant Powder Co.,* 107 Cal. 549;[1] *Elledge* v. *National etc. Ry. Co.,* 100 Cal. 282;[2] 16 Am. & Eng. Ency. of Law. p. 449, n. 1; Buswell on Personal Injuries, secs. 111, 111a; *Carlin* v. *San Francisco etc. R. R. Co.,* 36 Cal. 404.) If defendant's negligence concurred with that of a fellow-servant, the defendant is liable. (*Fisk* v. *Central Pacific R. R. Co.,* 72 Cal. 38.[3]) The burden is on the defendant to show that the negligence of a fellow-servant was the sole cause of the accident. (*Pastene* v. *Adams,* 49 Cal. 87; *Learned* v. *Castle,* 78 Cal. 461.)

L. N. Peter, for Respondent.

The hoisting machinery being of an ordinary character, and reasonably fitted for the purpose for which it was designed, the employer had fulfilled his duty. (*McAlpine* v. *Laydon,* 115 Cal. 72; *Higgins* v. *Williams,* 114 Cal. 181-184; *Alexander* v. *Central L. and M. Co.,* 104 Cal. 539; *Elledge* v. *Railway Co.,* 100 Cal. 289;[2] *Sappenfield* v. *Main,* 91 Cal. 55; *Brymer* v. *Southern Pacific Co.,* 90 Cal. 498; Buswell on Personal Injuries, secs. 196, 192-206; Civ. Code, secs. 1714, 1971; Deering on Negligence, sec. 198.) · Even if the machin-

[1] 48 Am. St. Rep. 146.          [3] 1 Am. St. Rep. 22, and note.
[2] 38 Am. St. Rep. 290.

ery be defective, if the negligence of a fellow-servant was the proximate cause of the injury, plaintiff cannot recover. (*Vizelich* v. *Southern Pacific Co.*, 126 Cal. 588; *Kevern* v. *Providence etc. M. Co.*, 70 Cal. 394.) The burden was upon the plaintiff to show the defects were the proximate and efficient cause of the accident. (16 Am. & Eng. Ency. of Law, 431-445, and cases cited; *Searls* v. *Central R. R. Co.*, 101 N. Y. 661; *Milwaukee* v. *Kellogg*, 94 U. S. 469.)

ANGELLOTTI, J.—This is an action for damages for personal injuries to plaintiff, alleged to have been suffered by him by reason of the negligence of defendant, while he was in its employ. The action was tried by the court without a jury, and the findings and judgment were given in defendant's favor. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

The defendant, a mining company, was engaged in sinking a vertical shaft on its property, which, on July 22, 1899, had reached a depth of more than two hundred feet. On that day plaintiff was at work in said shaft, excavating dirt and rock from the bottom thereof, which was then being hoisted to the surface. While he was so at work a bucket filled with dirt and rock, weighing some two hundred pounds, which was then being hoisted out of the shaft, fell to the bottom thereof and upon plaintiff's left foot and ankle, severely injuring him. It was alleged in the complaint that the hoisting machinery then being used by defendant was then being maintained by it in a negligent and unsafe condition for said use, and that by reason of said negligent construction and maintenance it gave way and caused the falling of the bucket upon plaintiff. This was denied by the answer, which also averred that the injury to plaintiff was caused by his own negligence and the negligence of a fellow-servant. The court found that plaintiff was not guilty of contributory negligence, but further found that the machinery was not being maintained by defendant in a negligent or unsafe condition; that the fall of the bucket was not caused by the breaking or giving away of any part of said machinery, or by its negligent construction or maintenance; that said machinery was constructed and at all times maintained by defendant in a safe and sound

condition for the purposes for which it was being used, and that the accident was caused by the negligence of a fellow-servant. These findings are attacked by plaintiff as not being sustained by the evidence. The hoisting machinery was very simple in character, and was operated by water-power. The hoist-cable was fastened to a drum on a movable shaft, on which it was wound and unwound, and ran from the drum over a sheave in a gallows-frame, and thence into the shaft of defendant's mine. The shaft of the water-wheel used in operating the hoist had on the end next to the hoist three teeth, or shoulders, so made as to fit into three corresponding teeth, or shoulders, in the end of the movable shaft. When the movable shaft was thrown to the left, its teeth, or shoulders, fitted into the teeth, or shoulders, of the water-wheel shaft, and the two shafts revolved together, thus winding the cable around the drum of the movable shaft and raising from the mine anything attached to the cable. When the movable shaft was so adjusted it was said to be "in clutch." The water-wheel had no reverse motion, and the machinery could be used only for hoisting from the mine. In lowering material into the mine, the brake only was used to arrest and regulate the descent. The movable shaft was thrown into clutch by means of a lever called the clutch-lever, which was moved by the hand of the operator on top of a horizontal timber in the gallows-frame. When this lever was moved to the right it threw the movable shaft to the left, and so into clutch. On this horizontal timber, on top of which the clutch-lever was moved, was nailed a strip of plank fifteen inches long and three quarters of an inch wide, called a safety or gauge cleat, the right-hand end of said cleat, as one faces the movable shaft from the hand end of the clutch-lever, marking the distance to which the clutch-lever must be moved to the right in order to throw the movable shaft into clutch.

The brake was applied to the movable shaft by means of a brake-block and brake-lever. The block had a semicircular bearing on the upper half of the movable shaft, and was brought into contact with the shaft by weight applied to the lever at the hand end, which is near the end of the clutch-lever, and within reach of the man operating the same, whose

business it was to operate both the clutch-lever and brake-lever. At the time of the accident, one Smith, a fellow-employee, was operating the machinery at the top of the shaft. Plaintiff having loaded the bucket at the bottom of the shaft, gave the signal for raising it, whereupon Smith, by the use of the clutch-lever, threw the movable shaft into clutch, and the bucket was raised up in the shaft twenty or thirty feet, when the movable shaft came out of clutch, and the weight of the loaded bucket caused the movable shaft, detached from the water-wheel, to move in the opposite direction, thus allowing the bucket at the end of the cable to fall to the bottom of the shaft without being detached from the cable. There was no breaking or giving way of the machinery, and it appears to be conceded that the movable shaft having been fully thrown into clutch, unless the lever controlling the same had been allowed to slip back, thus leaving the movable shaft free to come out of clutch, the accident could not have occurred. Plaintiff's main contention was, that the safety or gauge cleat, which there was testimony tending to show was relied upon to assist in holding the lever in place, was, because of its slight bearing or resisting surface, not sufficient for such purpose, and allowed the lever to slip back, and, further, that the brake was defective, and for that reason the operator was unable to arrest the descent of the bucket, after the shaft had come out of clutch and the bucket had commenced falling.

The evidence was certainly sufficient to sustain the findings of the trial court to the extent necessary to uphold the judgment. Counsel for plaintiff earnestly contend that the theory upon which the conclusions were reached was erroneous, and that this is shown by the exhaustive written opinion of the learned judge who tried the case, and which is contained in defendant's brief. This opinion, of course, constitutes no part of the record, and, even if we were satisfied that the judge was in error in some of the views as to the law expressed therein, that fact would not avail plaintiff, for the findings of fact must stand or fall upon the evidence contained in the record. It is very clearly shown by the opinion that the learned judge was satisfied by the evidence that the machinery was reasonably safe for the purposes intended, if used in the ordinary way. It has been said by this court

that "if the machinery or apparatus be of an ordinary character, and reasonably fitted for the purposes for which it is designed, the employer in this regard has fulfilled his duty. The burden is upon the injured servant to show that the machinery or appliances were so defective or inadequate as to make the use of them by the employer negligent and culpable." (*McAlpine* v. *Laydon,* 115 Cal. 68.) Much can be said in support of the conclusion of the trial court to the effect that the machinery was reasonably safe for the purposes intended, if used in the ordinary way.

The testimony showed that the movable shaft when in motion, unless restrained by the clutch-lever, had a slight tendency to slip, by reason of the resistance or weight of the bucket and rope and the friction of the shaft, and thus throw the lever back and come out of clutch. For this reason it was essential, in order to keep it in clutch, that the clutch-lever should be retained at the point marked by the end of the safety or gauge cleat. While there was testimony that this cleat was used, not only as a gauge to show the point to which the lever must be moved and retained to put the cleat into clutch and keep it in clutch, but also to prevent the lever from going back without power applied to it, the testimony of plaintiff's witnesses showed that the only proper method of controlling levers or machinery of the character here used was by the hand of the operator alone, without the use of any cleat. There was testimony to the effect that it was so being operated at the time of the accident, the testimony of the only living eye-witness, Haskins, indicating that the operator, Smith, who died prior to the trial, had one hand upon the clutch-lever at that time. It is impliedly conceded, as it must be under the evidence, that if there had been no cleat at all, or other appliance designed to hold the lever in place, the machinery would not have been defective by reason of the absence thereof, for, as already stated, the evidence indicated that the only proper method of controlling such a lever is by the hand of the operator, and that the operator was in fact using such proper method. It appears that the tendency of the lever to slip back was very slight; and as it could easily be controlled by the hand, when operated in this way by a

competent man,—and there is no question in the case as to the competency of the operator,—there was apparently no danger of the movable shaft being detached from the water-wheel shaft.

As to the brake, it appears that the purpose was simply to hold the bucket in place while the clutch was thrown out and the bucket landed, and to regulate the lowering of the bucket loaded with men or material to the bottom of the shaft. It had always answered the purposes for which it was designed, and the court below was of the opinion that it was ordinarily and reasonably safe for those purposes.

If, however, it should be conceded that the machinery was defective in either of the particulars claimed, the plaintiff could recover only in the event that the defective machinery or appliance was the proximate cause of the injury. (*Vizelich* v. *Southern Pacific Co.*, 126 Cal. 587; *Trewatha* v. *Buchanan*, 96 Cal. 494; *Kevern* v. *Providence etc. M. Co.*, 70 Cal. 394.) The finding of the court that the fall of the bucket was not caused by the negligent construction or maintenance of the machinery, and the further finding that it was caused by the negligence of the fellow-servant Smith, in operating the machinery, clearly find sufficient support in the evidence. It must be borne in mind that, as the clutch-lever had to be moved rapidly by the hand of the operator to the right and the left, no device that would prevent him from easily putting the lever over the cleat would be proper. There was evidence that the operator, immediately before the accident, had one hand upon the clutch-lever, and at the same time was astride of the brake-lever, teetering upon it, and resting his other hand thereon, and the next instant the accident was occurring with the operator still in the same position. If Smith at the time of the accident had one hand upon the clutch-lever, it is difficult to understand how anything but his own negligence could have allowed the lever to slip back; and taking into consideration the fact that he was then, with one hand upon the clutch-lever, doing something that was unreasonable and clearly improper,—viz., as expressed by the learned judge in his opinion, "teetering on the brake while a loaded bucket was ascending, thereby throwing into the contest between gravitation and the water-wheel a new, unusual, jarring, in-

termittent, and disturbing force,''—the inference is very strong that he, by his own negligent act, pulled or moved the lever over the end of the cleat, and to the left, thus releasing the movable shaft from clutch. In this connection, it is unnecessary to discuss the contention of plaintiff as to the burden of proof, for the evidence was sufficient, whatever the true rule may be.

It is urged that if the brake had been properly constructed the descent of the bucket could have been stopped thereby, and the injury thus avoided. If we assume, as we must under the finding of the court, that the movable shaft was relieved from clutch wholly by reason of the negligence of the fellow-servant, that negligence was the sole proximate cause of the injury. The case of *Vizelich* v. *Southern Pacific Co.*, 126 Cal. 589, is directly in point on this proposition. The shaft having been released, and the loaded bucket having commenced to fall solely by reason of the operator's negligence, we would, as was said in the case last cited, ''Leave the realm of certainty and enter upon that of conjecture,'' if we sought to go behind such proximate cause and inquire whether a brake sufficient to meet such emergency should have been supplied, whether or not it was in fact sufficient for that purpose, if properly used, and whether or not, if it had been sufficient, it would have been used by the negligent operator in this particular emergency in such a manner as to arrest the descent of the loaded bucket in the few feet it had to fall before reaching the bottom of the shaft.

2. Witness Watson, a mining engineer, called for plaintiff, was asked by plaintiff: ''What was the condition of that machine on the eighth day of July, 1900?'' This was objected to as irrelevant and immaterial, and the objection was sustained. We cannot see the materiality of the proposed testimony, but if it be conceded that it was material, the matter was fully covered by other testimony given by the witness. He had theretofore testified that he saw the machinery on July 22, 1899, the day of the accident, again on February 3, 1900, and again on July 8, 1900; that on February 3, 1900, so far as he observed, it was in the same condition as on July 22, 1899, except that some strengthening supports had been added on the shed around the gear; that the diagram that he

had made from his inspection, measurement and notes of February 3, 1900, represented the machinery fairly as it stood on July 22, 1899, and that on July 8, 1900, there had been no change made in the machine as the same was indicated in the diagram, beyond wedging up,—extra wedges and braces put in here and there.

3. The witness Watson was further asked by plaintiff on direct examination: "You spoke yesterday of the frame and machine being wedged, supported by slivers; what you designate as dutchmen. What general effect, if any, had that method of use of wedges, dutchmen, and slivers, upon the safety, firmness of the machine, structure?" This was objected to upon the ground that it was irrelevant, immaterial, and incompetent, and the objection was sustained. The witness had already been allowed to fully testify as to the effect of the method of the use of wedges, dutchmen, and slivers upon the firmness of the machine, so that the question, so far as proper, had already been fully answered.

4. The witness Watson was further asked by plaintiff on direct examination: "I will ask you now if the machine you have described and diagrammed in connection with the brake then in use would be, or is, or was, on that date a safe machine and appliance to hoist a weight that you have described from a shaft over two hundred feet deep?" This was objected to upon the ground that it was irrelevant, immaterial, and incompetent, and the objection was sustained. In *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120,[1] this court through Mr. Justice Temple, said: "The cases do undoubtedly hold that an expert cannot be asked whether a structure is a safe one, or whether certain methods are prudent." (See, also, *Sappenfield* v. *Main-Street R. R. Co.*, 91 Cal. 48, 59.) The plaintiff was entitled to show, and did show by this witness, facts upon which the court could decide as to whether the machinery was safe or not. As is shown in the Giraudi case, information desired from which a conclusion of unsafety necessarily flows is admissible, and the answer to such a question as this is often such that its admission would not be held cause for reversal. But, under the authorities, there was no error in sustaining the objection.

[1] 48 Am. St. Rep. 114.

5. It appeared that the plaintiff was brought out of the shaft several minutes after the occurrence of the accident. It having been shown that Haskins, the superintendent, was present at the time, the plaintiff was asked: "Did you make an inquiry of Mr. Smith at the time in regard to what caused the accident, and, if so, state what your inquiry was, and what was his reply?" This was objected to upon the ground that the declaration of Smith could not bind the corporation, and the objection was sustained. The plaintiff then offered to prove, for the purpose of rebutting the evidence as to negligence of the fellow-servant, "that about ten minutes after the occurrence, and as soon as he reached the top of the shaft, he asked the brakeman, 'How did it happen?' The brakeman said in the presence of Mr. Haskins that 'The clutch flew out, the machinery gave way,' and that the brake would not hold it. Mr. Haskins replied, 'Yes, because I saw him put the clutch in place, throw the clutch in place.'" This was objected to as irrelevant, immaterial, and incompetent, and the objection was sustained. Haskins was the superintendent of the mine, in charge of the works. It is not claimed that this testimony was offered for the purpose of impeaching the witness Haskins, and no foundation was laid for any impeachment. It was explicitly stated that the object was to rebut the testimony of negligence of the fellow-servant. The objections were properly sustained. Any declarations which might have been then made by either Smith or Haskins constituted no part of the *res gestæ.* (*Durkee* v. *Central Pacific Co.,* 69 Cal. 535;[1] *Lissak* v. *Crocker Co.,* 119 Cal. 444.) Haskins, the superintendent of the mine, had no more power to bind his employer, the defendant corporation, by admissions as to the cause of the accident than had Smith, the man operating the lever and the brake. He was not the defendant corporation, and did not represent it for the purpose of making admissions as to the cause of the accident that had already occurred. If he made an admission as to such cause, he was not in doing so performing on behalf of the defendant corporation any duty by law imposed upon it, and was not, as to such admission, the representative of his employer. (*Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 423.) The admissions of an

[1] 58 Am. Rep. 562, and note.

agent are not binding, unless they are made not only during the continuance of the agency, but in regard to a transaction then pending at the very time they are made. (*Birch* v. *Hale,* 99 Cal. 301; *Borland* v. *Nevada etc.,* 99 Cal. 94;[1] *Durkee* v. *Central Pacific Co.,* 69 Cal. 535.[2])

6. The witness Haskins, called for plaintiff, was asked, "Do you know the depth of shaft you had in view sinking at the time the company first placed the machinery?" An objection that the same was irrelevant, immaterial, and incompetent was sustained. He was further asked: "What experience had you prior to taking the superintendency of this work on the mine there in the handling of that class of machinery?" An objection that the same was immaterial and irrelevant was sustained. The rulings of the court were correct. The question as to the machinery was, under the issues made by the pleadings, as to whether it was *at the time of the accident* reasonably suitable and safe for the work that was then being done. We cannot see that the proposed testimony could assist in the determination of that question. Learned counsel's claim appears to be, that if defendant had then intended sinking a shaft, say only one hundred feet in depth, it may be inferred that the machinery provided by it would not be suitable and safe for a deeper shaft, and that such testimony as to the intention of defendant would tend to show that the machinery was not suitable and safe for the work then being done on a shaft, say two hundred feet in depth. Such testimony would be in the highest degree speculative, and could not affect the question as to the actual condition and capacity of the machinery at the time of the accident with reference to the work then being done.

The prior experience of Haskins was in no way involved by the issues made. It is said that if the plaintiff had been permitted to show his lack of experience it would intelligibly account for the character of some of the appliances. It was not incumbent upon the plaintiff to account for this. If the appliances were not in fact safe and suitable, it was immaterial why they were not so. Haskins's lack of experience would not tend to show any defect.

7. The question asked the witness Light, in rebuttal, as to

[1] 37 Am. St. Rep. 32.          [2] 58 Am. Rep. 562, and note.

whether a brake properly constructed would hold a weight and prevent it falling under certain circumstances, was not proper rebuttal, and it was not error to sustain the objection thereto, made on that ground.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.