FRANK ST. MARTIN *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, May Term, 1915.
THAYER, RORABACK, WHEELER, BEACH and BURPEE, Js.

In an action to recover damages for an injury to the person, no recovery can be had for mental pain and anguish except such as is the natural and proximate result of the act complained of.

The distress of the injured person arising from the fatal illness of his wife and his own inability to be with her, and his feelings and experiences after leaving the hospital and while visiting her grave, are entirely aside from any suffering caused by the accident; and the admission of testimony to that effect cannot be treated as. harmless, especially in a case in which, like the present, the sole question for the jury is the amount of damages.

Any improper evidence that tends to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless.

Argued May 6th—decided June 10th, 1915.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negli-

gence, brought to the Superior Court in Windham County and tried to the jury before *Reed, J.;* verdict and judgment for the plaintiff for $4,000, and appeal by the defendant. *Error and new trial ordered.*

*William L. Barnett,* for the appellant (defendant).

*Charles A. Capen,* for the appellee (plaintiff).

RORABACK, J. The complaint stated this case: The defendant company owns and operates a steam railroad extending from Willimantic to New Haven. While in the exercise of due care the plaintiff was injured when riding as a passenger on one of the defendant's trains from Willimantic to New Haven. His injuries were caused by a collision between the train on which he was riding and an engine standing on the defendant's tracks. This collision occurred by reason of the negligence of the employees of the defendant. In describing the nature of his injuries the plaintiff alleges that he "has suffered great physical and mental pain and anguish; been to great expense for medicine and medical care; was confined a long time in the Saint Joseph's Hospital in the said city of Willimantic; has been unable since the time of said accident to do any labor or attend to his usual vocation and duties of life, and is permanently disabled from ever again performing the same."

Upon the trial of the case to the jury all the allegations of the plaintiff were admitted except the one relating to the plaintiff's injuries. This was denied.

The errors of which the defendant complains are based upon evidence received and the instructions of the court relative to mental pain and suffering.

Against the objections and exceptions of counsel for the defendant, the following questions and answers are

found in the record touching the plaintiff's mental condition after he was injured: "Q. You go ahead, Mr. St. Martin, and tell what you worried about in the hospital. A. Well, when I was there I worried about myself, that is about my pain, that I couldn't get out; and of course I was thinking all the time about my wife being sick in Liberty Hill and here I was laid up in Willimantic, and because I knowed when I left her she was very sick. . . . A. Well, I knowed that she was very sick, she couldn't never get better; she had to die. She was sick with consumption and I had two young ones there, which was young, and I was the only support for them. So that left my wife and two young ones with my folks. My old mother took care of them. Otherwise I didn't have my mother, I didn't know who would take care of them. And I worried about them more than I did about myself, because it is natural for anybody to worry about his own family. And the only way that I can speak with her, my father was coming to see me at the time, and she used to send messages to me, and I would send back a message. The Court: Send what? A. Send a message to me, a few words. And when she was so bad that she thought that . . . she was going to die, she sent through my father if I wanted to forgive her whatever we shall happen to have during the ten years that we were married; and the only way that I could answer to her was the same way, to tell my father to ask her for me. But I had a secret that I wanted to tell my wife, and I couldn't tell. I couldn't tell nobody of it, and I daresn't tell even my father. I wanted to tell her that secret. I never had a chance to tell, and I have got it in my mind yet. I should like to tell it then. I was expecting to tell her that same night when I was hurt. I was intending to tell her that night. . . . Q. Tell the circumstances when you saw her. A. Well, when I came out of the

hospital my first thing was to find out where my wife was. Q. Excuse me, you knew she was dead? A. I knowed she was dead, for they came and told me the next day after she was dead—my father came and told me she was dead. . . . Q. What you did? A. Well, after I got the number of the grave I went to the cemetery. That was about a month or so after I was out of the hospital, for when I first come out I couldn't get—I wasn't so that I could go, and I wanted to find the grave. . . . So I went to Mr. Arnold, here, the stone cutter, and I ordered a headstone for her, which I had my name and her name and her age, and I had it set on the grave where it was designed; and two of my family, my father-in-law in particular, kept telling me that he knows where she was buried. Of course I couldn't go and see where she was buried, only go by what people tell me, that's all. My father told me that he knows where she was buried."

In addition, against the objection of the defendant, the plaintiff was also allowed to testify: "Q. Never mind. What are you worrying about? A. Well, my worry most is about I don't know but I shall be or when I shall be put in some—well, I might be termed a pauper and my young ones be parted from me. Any father will think of it. Anybody that raises a family will think that it is very hard to be parted from his young ones. I used to support my young ones once."

The doctrine allowing damages for mental anguish is subject to certain well-settled rules which to some extent restrict its operation. The rule which is most important is that no recovery can be had for consequences which are not the natural and proximate result of the act complained of.

While the precise question now presented has never been directly passed upon by this court, yet we find it

St. Martin *v.* New York, N. H. & H. R. Co.

stated in the case of *Gibney* v. *Lewis*, 68 Conn. 392, 396, 36 Atl. 799: "It is true, as a general rule, that mental suffering . . . may be an element of damages when it is a natural and proximate consequence of some recognized cause of action." In describing what damages are recoverable for mental anguish, Sedgwick, in his work on Damages (Vol. 1, 9th Ed.) § 43g, says: "One cannot recover for mental anguish caused by thought of the extraneous suffering or inconvenience which might be entailed on members of his family." Another statement of the rule appears in Shearman & Redfield on Negligence (Vol. 3, 6th Ed.) § 761: "The mental suffering which may be allowed for includes such as arises from the plaintiff's reflections upon what he personally has to endure, or anxiety for his escape. But his distress, in view of the consequences which his disability may bring upon others, even of his own family, is too remote a consequence of the injury to be compensated for in damages." In *Maynard* v. *Oregon R. & N. Co.*, 46 Ore. 15, 78 Pac. 983, it was held that mental anguish or distress resulting from the realization of physical inability, because of the injury, to properly care for those dependent on the plaintiff for support and education, is not an element of consequential damages to be recovered in an action for personal injuries. It is stated in *Linn* v. *Duquesne Borough*, 204 Pa. St. 551, 553, 54 Atl. 341, 93 Amer. St. Rep. 800: "Mental suffering has not generally been recognized as an element of damages for which compensation can be allowed, unless it is directly connected with a physical injury or is the direct and natural result of a wanton and intentional wrong." In *Atchison, T. & S. F. R. Co.* v. *Chance*, 57 Kan. 40, 45, 47 Pac. 60, the court said: "The court erred in refusing to strike out the testimony to the effect that Finnegan was troubled by the sickness and confinement of his wife, and the fear that he would

leave her and the child in a dependent and helpless condition. Under the decisions of this court, a recovery may be had for mental suffering or anguish of mind resulting from physical pain and suffering endured by the injured party; but it is improper to admit evidence as to mental suffering on account of the circumstances or conditions of others." In *Bahr* v. *Northern Pacific Ry. Co.*, 101 Minn. 314, 112 N. W. 267, the court held that, in an action for personal injuries, "the mental anguish or suffering which can be proved is such only as is endured by the plaintiff as the direct consequence of injury to himself." The case of *Sullivan* v. *Old Colony Street Ry. Co.*, 197 Mass. 512, 83 N. E. 1091, was an action by a married woman for personal injuries, resulting in an extremely nervous condition on her part which might cause the premature birth of a child. It was held in this case that the plaintiff could not recover damages for her mental suffering on account of the death of a child who was conceived by her seven months after her injuries and was born prematurely seven months later. In this case this doctrine was enunciated (p. 515): "The connection between the tortious act of a person sought to be charged for the consequence of an injury, as the cause, and the injury sustained, as the effect, must be established by a fair preponderance of the evidence before a plaintiff can be permitted to recover. Such causal connection cannot be left to conjecture, surmise or speculation, but must rest upon a firm foundation of proof." It was also stated (p. 516): "The mental suffering, for which damages can be recovered, therefore, is limited to that which results to the person injured as the necessary or natural consequence of the physical injury. But sentiments of grief, sorrow or mourning, which are aroused by extraneous causes, thoughts or reflections, are excluded. The contemplation of the suffering and

death of a child, begotten long after the event complained of, is too remote from the original physical injury to the parent and too intangible and ethereal to be connected with the original wrong of the defendant as a result to be reasonably apprehended from such a cause. The law cannot enter the realm of pure sentiment in this class of case, and award pecuniary compensation for those injured feelings which spring from sympathy and the severance of ties of love and affection."

It follows, therefore, that a portion of the evidence relating to the plaintiff's mental distress was improperly admitted. This evidence should have been confined to such mental suffering as was the legal and natural consequence of the act complained of. The features of this class of testimony which consist of the plaintiff's distress about the condition of his wife and children, his inability to be with his wife when she was sick and dying, and further as to his feelings and experiences about a month after he came out of the hospital when he was in the cemetery where his wife was buried, should not have been admitted as testimony. These statements of his meditations were wholly aside from and independent of any suffering caused by the accident, and were too remote, speculative and uncertain to form any proper basis upon which to estimate damages.

It cannot be said that this testimony was harmless and that the jury were not misled by it. Any improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless. In the present case the sole question for the determination of the jury was as to the amount of damages. It is quite obvious from the amount of the verdict ($4,000) and the character of this testimony, that it may in some

St. Martin *v.* New York, N. H. & H. R. Co.

degree have improperly prejudiced the defendant upon the only issue in the case.

The instructions of the court as to the elements of damage that the jury might consider because of the plaintiff's mental pain and suffering were inadequate and inaccurate. Upon this subject they were told that "continual mental worry as a result of not being able to work and earn a living for self and family is continual mental pain and suffering. Now, that would be correct, and I say it to you as correct, but of course I should also say that the mental worry . . . must be as a result—of course—the worry as a result—of the injuries, the injury that is complained of and that he received. If he had the mental worry and anxiety lest he couldn't earn a living, or any other mental worry, that the plaintiff had as a result of the injury that he received and complained of, that would be proper for you to consider as an element of damage."

This portion of the charge would naturally have led the jury to believe that the evidence upon this phase of the case, which we have already held to be inadmissible, might properly be taken into consideration by them in estimating damages. If this evidence were inadmissible, certainly the remarks of the court upon this same subject cannot be sustained.

There is error and a new trial is ordered.

In this opinion the other judges concurred.