[Civ. No. 16683.   First Dist., Div. Two.   Feb. 11, 1957.]

MABEL ARLETTA DILLON, Respondent, v. SIDNEY
WALLACE et al., Appellants.

Healy & Walcom, Healy & Martin and F. A. Plank for Appellants.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Respondent.

DOOLING, Acting P. J.—Defendants appeal from a judgment for $12,500 entered following the verdict of a jury. The plaintiff was injured as a result of a fall caused by her slipping on a piece of parsley on the floor of the grocery department of a market owned and operated by appellant Wallace and of which appellant Kent was manager. (There was a conflict in the evidence as to whether Kent was manager of the entire market or only of the grocery department. The complaint alleged that Kent was the general manager of the store and this was not denied in the answer. In any event the evidence on this, as on every issue, must be construed most favorably in support of the judgment.)

The fall occurred at about 10:10 a. m. on December 26, 1952, while respondent, who was in the market to make some purchases, was walking down one of the aisles in the grocery department. Shortly thereafter another customer called the appellant Kent. When he arrived respondent was leaning against a counter above the place where she had fallen. She testified that she showed him the piece of green vegetable upon which she had slipped. He looked at her knee and said that it looked to him as if it was broken. "He said, 'We can't take you home, we have got to take you to the hospital.' He said, 'Don't you worry about this,' he said, 'we are insured and we will pay your bills.'"

Respondent was then taken to a storage room where she

was seated on a chair waiting to be taken to the hospital. There was testimony of a further conversation with Kent while respondent was resting there in which he said: "Now, this is the store's fault, don't you worry about a thing, we will pay all bills."

The floors of the market had last been cleaned after closing hours on December 24. The market was closed on December 25. It reopened on December 26 at 8 a. m. Kent made an inspection of the floors before the market opened. He made no further inspection before the accident. Appellant Wallace testified that he had instructed his clerks to continually make inspections of the floor while working rather than have somebody do it hourly or every two hours, but no evidence was introduced that any employee had inspected the aisle where the parsley was found between Kent's inspection and the time of the accident. Kent further testified that wire mesh grocery carts were supplied for customers' use, and that customers frequently put unwrapped vegetables, including sprigs of parsley, into these carts. He was then asked the question: "Isn't it true that to your own knowledge that on many occasions, make that a number of occasions, loose bits of vegetables, parsley, carrot tops and the like fell out through those baskets onto the floor?" He answered: "They do fall through the baskets."

"Q. That is right. You knew that, didn't you? A. That is right."

In the face of this evidence it is vain for appellants to argue that there is no sufficient evidence to establish their liability. The jury could find from the evidence that no inspection of the floor in this aisle was made for a period of more than two hours. It certainly presented a fact question for the jury whether in the exercise of ordinary care appellants, with knowledge of the fact that customers were in the habit of putting loose vegetables into the mesh carts and that loose bits of vegetable might fall and had previously fallen through the meshes to the floor, should have made more frequent inspections of the floor than the evidence indicates were in fact made in this case. It is ordinarily the rule that plaintiff must prove that the defective condition existed long enough so that by the use of ordinary care it should have been discovered and remedied. Otherwise stated: "the owner must have either actual or constructive knowledge of the dangerous condition *or have been able by the exercise of ordinary care to discover the condition,* which

if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it *or as a man of ordinary prudence should have discovered it.*" (Emphasis ours; *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841].) There is no evidence that appellants had actual knowledge of the presence of this foreign matter on the floor, but there is ample evidence in the knowledge of the continuing danger of loose vegetables falling through the meshes of the carts as they had been known to do in the past, to make it a jury question as to whether appellants would "have been able by the exercise of ordinary care to discover the condition." ▮ Where a business invitor has knowledge of a course of conduct of third persons on his premises which may endanger the safety of his invitees he is under a duty to exercise ordinary care to forestall such injury. (Rest., Torts, § 348; *Stockwell* v. *Board of Trustees,* 64 Cal.App.2d 197 [148 P.2d 505]; *Terrell* v. *Key System,* 69 Cal.App.2d 682 [159 P.2d 704].) In *Harris* v. *Joffe,* 28 Cal.2d 418, 425 [170 P.2d 454], the court said of a recurring dangerous condition of the premises due to tenants tracking water into the hallway in wet weather: "Although there is no evidence that Mrs. Joffe had actual knowledge of the condition at the time of the injury, her constructive knowledge may be inferred from the prior complaints, and she had the affirmative duty of using ordinary care to keep the vestibule in a safe condition." Here the jury could reasonably find that with knowledge of the recurring danger from loose vegetable matter falling through the carts appellants had not used ordinary care for the protection of their customers from this known hazard.

The first admission of appellant Kent was admitted into evidence against his employer Wallace as well as against himself on the theory that it was a part of the res gestae. We find no error in this ruling. ▮ Since the decision of *Showalter* v. *Western Pac. R. R. Co.,* 16 Cal.2d 460 [106 P.2d 895], it has been recognized that where an occurrence is "startling enough to produce . . . nervous excitement and render the utterance spontaneous and unreflecting" and "before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance" (16 Cal.2d p. 468) statements relevant to the occurrence are

452

admissible as part of the res gestae. ■ Here Kent found respondent in pain at the scene of her fall, he was shown the parsley upon which she slipped and he immediately told her that her knee seemed to be broken, that she could not go home but must go to a hospital, and added: ''Don't you worry about this . . . we are insured and will pay your bills.'' Under the Showalter case and *Lane* v. *Pacific Greyhound Lines,* 26 Cal.2d 575 [160 P.2d 21], this declaration at the scene of the fall and under the impact of Kent's first discovery of the facts was properly held admissible against his employer.

■ The suggestion that it was improper in this and the evidence of the later statement of Kent to include his references to insurance are answered by the cases holding that when a reference to insurance is an integral part of an otherwise admissible declaration the whole is properly admitted. (*Hawke* v. *Burns,* 140 Cal.App.2d 158, 167-168 [294 P.2d 1008] and cases cited.)

■ The court ruled that the second statement made after respondent was taken to the storage room was not a part of the res gestae and instructed the jury that the statement made by Kent in the storeroom would be admissible against his employer Wallace, if, and only if, the jury first found that this statement was made by Kent in the scope and course of his authority. Appellant Wallace argues that there was no evidence from which the jury could reasonably find that Kent had any authority to bind Wallace by any admission of liability. The evidence in this respect shows that Kent had general charge as manager of the store's operations and in case of injury to a customer it was his duty to see that the customer got the necessary attention. There is no evidence that he had any authority to negotiate or settle any claim that such a customer might have, nor is the negotiation or settlement of such claims any part of the ordinary operation of a manager of a market. The court was in error in leaving to the jury the question of Kent's authority to bind Wallace by any statement acknowledging liability.

In *Luman* v. *Golden Ancient Channel M. Co.,* 140 Cal. 700, 709 [74 P. 307], the court said of the declaration of a mine superintendent, not a part of the res gestae, as to the cause of an accident: ''Haskins, the superintendent of the mine, had no more power to bind his employer . . . by admissions as to the cause of the accident than had Smith, the man operating the lever and brake. He was not the defendant

corporation, and did not represent it for the purpose of making admissions as to the cause of the accident that had already occurred. If he made an admission as to such cause, he was not in doing so performing on behalf of the defendant corporation any duty by law imposed upon it, and was not, as to such admission, the representative of his employer." (*Ferguson* v. *Basin Consol. Mines,* 152 Cal. 712 [93 P. 867]; *Beasley* v. *San Jose Fruit-Packing Co.,* 92 Cal. 388, 391-392 [28 P. 485]; *Westman* v. *Clifton's Brookdale, Inc.,* 89 Cal. App.2d 307, 311 [200 P.2d 814]; *Breland* v. *Traylor Eng. etc. Co.,* 52 Cal.App.2d 415, 421-422 [126 P.2d 455]; *Shaver* v. *United Parcel Service,* 90 Cal.App. 764, 770-771 [266 P. 606].) ▪ It is ordinarily no part of an agent's authority to make admissions binding on his principal and to make such admissions admissible against the principal more must be shown than the mere authority to act for the principal in the transaction in question. (Rest., Agency, § 288.) Cases may be found which seem at odds with this principle but examination will show that they rest at base on some other ground, e.g., *Dressel* v. *Parr Cement Co.,* 80 Cal.App.2d 536, 539-540 [181 P.2d 962], where the agent's *post rem* admission was admitted to show his knowledge, which was imputable to the principal.

This error, standing alone, might not require a reversal, since the second conversation of Kent was largely corroborative of the first, which we have held properly admitted against Wallace under the res gestae rule.

▪ Evidence in great detail was admitted, over appellants' objection, that respondent had an invalid husband, that while she was in the hospital he was taken to another hospital fatally ill and there died, that respondent was taken in an ambulance to see her husband while he was in this hospital and never saw him again alive and that she was taken to his funeral on a stretcher. This evidence was admitted on the theory that while appellants were not liable for any grief and suffering caused by the husband's illness and death the jury was entitled to consider these circumstances in determining the amount of mental suffering caused by the injury to respondent.

The precise argument has been twice presented to our Supreme Court and twice rejected by it. In *Steinberger* v. *California Electric etc. Co.,* 176 Cal. 386 [168 P. 570], the plaintiff sought to justify the admission of evidence of her poverty and the size and necessitous condition of her family

"by the claim that it was offered as a part of the showing that plaintiff suffered 'mental worry.'" (176 Cal. p. 390.) The court said at page 391: "On strictly logical grounds it is, perhaps, difficult to say why a plaintiff should not be allowed to show every fact connected with his situation in life. One can conceive of innumerable factors in the life of every individual, and of his relation to others, which might be thought to have some relevance to the extent of worry which would result in case of an injury to him. But logical relevancy is not the sole test of the admissibility of evidence. Certain kinds of evidence, although material to the issue, are excluded because of their tendency to mislead, confuse, or prejudice the jury. We think that proof of the poverty of the plaintiff in personal suits is a fair example of the danger of injustice through the introduction of evidence of this kind, which has always, and we think properly, been regarded as outweighing the advantages to be derived from permitting it to be offered. . . . Every person sustaining physical injuries will suffer mentally. If, under the guise of showing the extent of such mental suffering, the plaintiff may show his poverty, and consequent worry, he may on the same ground introduce in evidence a mass of circumstances which in themselves would not be proper elements of damage because too remote or speculative, bringing them in by the claim that he suffered increased worry by brooding over these extraneous factors. To allow such evidence at all is to invite parties to actions of this character to confuse the inquiry with an incalculable medley of collateral issues."

Again in *Smith* v. *Atchison etc. Ry. Co.*, 179 Cal. 611 [178 P. 501], evidence of the number of the plaintiff's children was admitted on counsel's argument: "It shows the man's condition, and if he had a helpless family how much more he would suffer in pain and mental anguish if he thought he was injured." (179 Cal. p. 614.) The court on the authority of the Steinberger case, *supra*, held the evidence improperly admitted.

Counsel for the respondent has not discussed or attempted to distinguish these two California cases nor has he cited any authority from this state or elsewhere holding such evidence admissible. Indeed the courts which have considered the question seem all to have reached the same conclusion, that evidence of the family situation of the injured party is not admissible, and may not be admitted to show the effect on

the mental anguish suffered by the injured person by reason of his disability.

In *St. Martin* v. *New York, N. H. & H. R. Co.*, 89 Conn. 405 [94 A. 279, L.R.A. 1916D 1035], the Connecticut court considered a case remarkably similar to this and held evidence of the illness and death of the plaintiff's wife while he was in the hospital inadmissible in the face of the argument that it was relevant to the extent of the plaintiff's mental suffering caused by his injuries. The note to that case in L.R.A. 1916D, pages 1038-1039 contains a collection of cases in all of which similar rulings were made. So in a note in 10 Am. & Eng. Ann.Cas. 288, the rule is stated, with a citation of supporting cases: "The contention that the evidence is admissible on the theory that the mental anguish of the plaintiff in contemplating the inconvenience and hardships of those dependent upon him for support is an element of damages, is untenable." A like result was reached in *Miranda* v. *Halama-Enderstein Co.*, 37 N.M. 87 [18 P.2d 1019] and *Maggio* v. *City of Cleveland*, 151 Ohio St. 136 [84 N.E.2d 912], cases decided after the publication of the notes herein referred to.

We are bound by the cited decisions of our Supreme Court to hold that the court erred in the admission of this evidence, and in view of the great emphasis placed upon it before the jury and the great appeal to the jury's sympathies necessarily involved in the facts disclosed to them we cannot hold that its admission was not prejudicial.

Appellant Kent argues that in no event could he be liable for his mere nonfeasance. The rule is thus stated in Restatement, Agency, section 355: "An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused, during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take." (See also 1 Mechem on Agency, 2d Ed., § 1474 et seq., pp. 1093-1098.)

The true question is whether the agent owes a duty to the third person as well as to his principal. If he owes a duty to the third person to act he will be liable for his failure to act. (2 Am.Jur., Agency, § 325, pp. 254-256.) Here Kent was in charge of the market and under a duty to protect its customers from injury by the exercise of ordinary care. He owed that duty to the customers as well as to his

employer Wallace. The breach of that duty to the customers will render him liable to them.

Appellants cite *Fisher* v. *General Petroleum Corp.*, 123 Cal.App.2d 770, 780 [267 P.2d 841], as laying down the contrary rule, but an examination of the case shows that there was no liability in any event in that case, since the person for whose death the action was brought was a licensee as to whom mere nonfeasance could not be the basis of liability.

Appellants' claim that the verdict was excessive need not be discussed since the case must be retried.

Judgment reversed.

Kaufman, J., and Draper, J. pro tem.,* concurred.

A petition for a rehearing was denied March 13, 1957, and respondent's petition for a hearing by the Supreme Court was denied April 10, 1957. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.