**MARTIN et al. v. CITY OF CORSICANA.**

No. 2051.

Court of Civil Appeals of Texas. Waco.

May 25, 1939.

Rehearing Denied July 6, 1939.

406

Saner, Saner & Jack, W. H. Jack, Jr., and R. L. Dillard, Jr., all of Dallas, for appellants.

Jack H. Thompson, Chas. T. Banister, and J. S. Simkins, all of Corsicana, for appellee.

JOHN B. ATKINSON, Special Associate Justice.

This suit was brought by O. W. Martin, for himself and as next friend for his minor son, Dudley Martin, to recover, in behalf of the minor, compensation for his personal injuries in the nature of burns, and in his own behalf, for expenses incurred in the treatment of such injuries. The injuries were alleged to have been caused by an explosion of a torch placed by the city upon one of its public streets where a storm sewer was being constructed. The plaintiff alleged that the torch was in a defective condition and that as Dudley Martin was passing along the street in close proximity to the torch, it exploded and ignited his clothes, resulting in the injuries. It was the contention of the defendant that Dudley was playing with the torch, bending down over it and attempting to blow it out, which resulted in his catching on fire.

The jury found, in response to special issues, that the torch did not send forth flames, on the occasion in question, to a greater extent than when normally operating; that the torch was not defective and out of order; that it was not improperly adjusted; that the defendant did not place the lighted torch in the proximity of the passageway used by pedestrians, and that it did not place the torch at such place adjacent to the passageway as to make the path unsafe for the plaintiff, Dudley Martin; and further found that it was negligence for Dudley Martin to travel South 23rd Street at the time and on the occasion in question, and that such negligence was a proximate cause of his injuries; and further found that at the time of receiving his injuries he was bending over the lighted torch in such position that his clothing could become ignited therefrom; that he was, at the time of receiving his injuries, attempting to blow out the lighted torch; and that each of said acts

on his part constituted negligence, and were each a proximate cause of his injuries.

■ The appellants present, by proper assignments, their contention that the court erred in overruling their motion for an instructed verdict, and their contentions that the evidence was insufficient to support the finding of the jury upon each of the issues relative to negligence and contributory negligence. These issues were properly raised by the pleadings and the finding of the jury on each of them is sufficiently supported by the evidence. The assignments presenting these contentions are overruled.

Appellants further assign as error the admitting in evidence of the testimony of Dr. Newton as to certain statements made by Mrs. Martin, the mother of Dudley Martin, in Dr. Newton's office on the night of the accident. Over the objection of the plaintiffs, Dr. Newton was permitted to testify as follows: "It is a fact that she was upbraiding him and telling him that she had told him to let this torch alone. I don't remember her saying that if he had let it alone he wouldn't have been burned, but I do remember that she upbraided him and accused him of having been pranking with that torch, or something to that effect; and she upbraided him to such an extent that I insisted that she quit; he was in great pain; and in a way I stopped her."

He further testified that Dudley was suffering great pain and agony at the time and that Mrs. Martin was excited and worried. Since no witness undertook to fix the time between the happening of the accident and the making of these declarations by Mrs. Martin in Dr. Newton's office, we must rely upon the following facts in making an estimate. These facts also tend to show the circumstances under which Mrs. Martin made the declarations.

On the night of the accident Mrs. Martin, her three small children, her daughter Mildred, Edgar Sears and her son, Dudley, then ten years 'of age, were returning on foot to the Martin home from the business portion of the city and were passing along South 23rd street. According to the testimony of Dudley, Mildred Martin and Edgar Sears, when they reached the place where the accident occurred, they had formed in single file for the purpose of passing a barricade which had been placed across the street as a further warning to the public, Mrs. Martin and her

three small children being in front, Mildred Martin next, Edgar Sears next, and Dudley in the rear. Dudley further testified that he saw the torch; that he didn't pay much attention to it; that he stayed right behind Edgar Sears; that suddenly he heard a sound; that the accident occurred on Saturday night, and that he did not remember anything further until he' woke up the next Tuesday. Mildred Martin and Edgar Sears further testified that the torch was in the traveled portion of the street and was two or three feet from the end of the barricade next to which they were passing; that they heard a spewing sound and a scream; and that they turned around and saw Dudley, his shirt on fire, retreating back on South 23rd street, and that Edgar Sears and Mrs. Martin overtook him and removed his burning shirt. Mrs. Alma Copeland and Mr. and Mrs. J. P. Robinson, who lived in the immediate vicinity, testified that they heard a popping or spewing. sound, saw a flare of light and heard the child screaming; and Mrs. Copeland further testified that she forthwith went to the scene of the accident and found Edgar Sears tearing Dudley's shirt off. Neither Mrs. Martin nor her smaller children were offered as witnesses, and none other testified as to the immediate occurrence. Without delay the Martins went to the Copeland home and Mildred was sent to Mr. Robinson's home to get him to take Dudley and Mrs. Martin to the doctor. Mr. and Mrs. Robinson, who had retired for the night, after making the necessary preparations, carried Dudley and his mother to the hospital in their automobile. Dr. Newton was called from his home and came to the hospital, where he gave the child treatment. In passing upon the evidence establishing these facts, and giving it a construction most favorable to appellants' contention, the trial court would have been justified in concluding that Mrs. Martin's declarations were made between forty and sixty minutes after Dudley received his burns.

■ The court is of the opinion that the declarations made by Mrs. Martin were a part of the res gestae of the principal transaction, and that the trial court did not commit error in admitting the evidence. The res gestae rule is well stated in 22 C.J. pp. 455, 458, as follows: "* * a declaration made or an act done after the happening of the principal fact may be admissible as part of the res gestae

when it is so intimately interwoven with the principal fact by the surrounding cir-·cumstances as to raise a reasonable presumption that it was made or done under the immediate influence of the principal transaction or event itself and is the spontaneous utterance or expression of thoughts created by, and springing out of, the transaction itself rather than the result of any premeditation or design."

This statement of the rule is quoted with approval by the court in the case of International Travelers' Association v. Griffing, Tex.Civ.App., 264 S.W. 263: In the case of Pilkenton v. Gulf, C. & S. F. Ry. Co., 70 Tex. 226, 7 S.W. 805, our Supreme Court, in discussing the rule, has the following to say: "To be a part of the res gestæ, the declarations are not required to be precisely concurrent in point of time with the principal transaction, if they spring out of it, tend to explain it, are voluntary and spontaneous, and are made at a time so near as to preclude the idea of deliberate design. * * * The rule is very latitudinous, and its application must be left largely to the judicial discretion of the trial court." Texas Interurban Ry. Co. v. Hughes, Tex.Com.App., 53 S.W.2d 448. The court may take into consideration the interest of the declarant; whether such declarations are against interest or otherwise; and the incentive to color the facts or deliberately make a fabrication of them. Houston & T. C. Ry. Co. v. Brooks, Tex.Civ.App., 294 S.W. 282; Harris v. Allison, Tex.Civ.App., 11 S.W.2d 821. Mrs. Martin was financially interested in this transaction and though not nominally a party to this suit, she is in fact such. Simpson v. Brotherton, 62 Tex. 170; San Antonio & A. P. Ry. Co. v. Hammon, 92 Tex. 509, 50 S.W. 123. A recovery for expenses incident to the treating of the child's injuries would have inured to the benefit of the community estate of herself and appellant, O. W. Martin. When we take into consideration her financial interest; the chain of occurrences; her relation to the child and the evident condition of her mind at the time, there is no doubt that her declarations on the occasion in question sprung out of and tended to explain the principal transaction; were voluntary and spontaneous and made at a time so near the principal transaction as to preclude the idea of premeditation or design. It will be noted that she

was not undertaking to relate the facts in regard to the occurrence, but was directing her remark to the child, who was then, according to his own evidence, unconscious. We cannot agree with the appellants that the declarations as made by Mrs. Martin were mere expressions of conclusions and opinions and not shown to have been made by one who witnessed the occurrence. The undisputed evidence shows that Mrs. Martin was present when the accident occurred and the jury would have been well warranted in concluding that she saw it. There was evidence to the effect that on another occasion at the Martin home, in talking to Dudley Rutledge, she had related facts with reference to the accident.

Appellants complain because the court permitted Dudley Rutledge to testify that he was in the Martin home about two weeks after Dudley Martin was released from the hospital; that on the occasion Mrs. Martin said that Dudley was trying to blow out a lamp; that it exploded and burned him. We do not think the court erred in admitting this evidence. The statements were made in Dudley Martin's presence and at his instance and he did not undertake to correct her. His conduct under the circumstances constituted a tacit admission of the truthfulness of the statement.

The court submitted to the jury issues in which it was asked what sum of money, if paid in cash, would reasonably compensate the plaintiffs for their damages. The jury answered each of these questions "none". Appellants contend that since the undisputed evidence was to the contrary, this shows, as a matter of law, that the findings of the jury were governed solely by prejudice and bias and that plaintiffs have been denied a fair and impartial trial. In view of the findings of the jury upon the issues of negligence and contributory negligence, its findings upon these issues became immaterial, and though the answers are contrary to the undisputed evidence, this alone does not show misconduct of the jury as a matter of law or require a new trial. Southern Pine Lumber Co. v. Andrade, Tex.Com.App., 124 S.W.2d 334.

We have considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.