[S. F. No. 17079. In Bank. June 22, 1945.]

NAOMI GAE LANE et al., Appellants, v. PACIFIC GREY-HOUND LINES (a Corporation) et al., Respondents.

F. H. Dam for Appellants.

Cooley, Crowley & Supple and T. H. DeLap for Respondents.

CARTER, J.—This is an action for damages for wrongful death. Plaintiffs are the widow and only children of John Harold Lane, who was killed when a bus owned by defendant Pacific Greyhound Lines and operated by defendant James C. Perkins collided with the automobile in which decedent was riding. From a judgment entered on the verdict of a jury in favor of defendants, plaintiffs have appealed.

The accident occurred about 7:30 in the evening on December 22, 1940, at or near the point where Tehama Avenue, an east-west street, enters and ends at San Pablo Avenue, a street running north and south, in El Cerrito, California. San Pablo is a four lane paved highway with a double white line running down the center and single lines dividing the traffic lanes. Tehama is a paved street 26 feet in width. There is a conflict in the evidence as to whether there were turning markers and an opening at the Tehama intersection in the double center marker on San Pablo. One of plaintiffs' witnesses testified that there were turning markers, that is, white circles in the center of San Pablo near both the south and north line of Tehama. From that it could have been inferred that there was an opening in the double line on San Pablo at the intersection and provision was made for a left hand turn into Tehama. The 45 mile per hour speed limit zone commenced about 62 feet north of the north line of Tehama. It was dark, the intersection unlighted; it was raining and the pavement was wet. Decedent was driving his sedan north along San Pablo near the center line, en route from San Francisco to his home which was located on the south side of Tehama about 116 feet from the west line of San Pablo. The bus was being driven south on San Pablo in the most westerly traffic lane. The evidence is conflicting with regard to where the collision between the bus and decedent's car occurred. The evidence indicates that the decedent's car was struck on its right or north side by the right front portion of the bumper

on the bus. According to defendants' evidence the bus was traveling at the rate of 23 miles per hour and when decedent's car was about 50 feet south of the south line of Tehama Avenue it crossed the double white center line proceeding in a northwesterly direction into the path of the oncoming bus, the impact occurring on the westerly side of San Pablo about 42 feet south of the south line of Tehama. Decedent's car was struck on its side and shoved by the bus the length thereof, about 33 feet and apparently decedent was killed by the impact. Defendant driver of the bus testified that he could see decedent's car approaching for about 1,000 feet. The headlights and brakes on the bus were functioning. On the other hand evidence introduced by plaintiffs consisting of glass and other debris from the impact and other evidence indicated that the collision occurred in the west half of the intersection and probably the northwest quarter thereof which would appear to be where decedent's car would be in the course of a left hand or west turn from San Pablo down Tehama. The bus was being operated at a speed of 40 to 45 miles per hour just prior to the impact although the 45 mile speed limit zone commenced only 62 feet north of the intersection. Prior to the collision the bus driver had been from time to time wiping the inside of the windshield. From the evidence the jury could have found either way on the issue of negligence. Likewise, the record would have supported a determination that decedent was not guilty of contributory negligence.

Plaintiffs contend that prejudicial error was committed in limiting the application of certain evidence introduced by them, to defendant Perkins, the driver of the bus. In that connection the following transpired. Four disinterested witnesses testified for plaintiffs that during various periods following the collision, defendant Perkins stated in their hearing that he did not know where the old man (referring to decedent) came from, or words to that effect. The witness Floyd Olsen who lived about 316 feet from the scene of the collision, testified that he heard the crash caused by the impact and immediately drove in his car to the intersection where Perkins was standing near his bus; that Perkins gave him the ''impression at least of being stunned or from shock and he was merely standing there . . .'' and upon being asked where the other car came from Perkins replied ''I don't know where

it came from. I didn't see him at all." Olsen returned home, instructed his wife to call an ambulance and returned to the scene of the tragedy. In five to seven minutes the police arrived. Thereafter Perkins accompanied Olsen to the latter's home where he telephoned to his employer. Immediately after that call and fifteen to twenty minutes after the making of the first statement Perkins again made substantially the same statement which was heard by Olsen's daughter Joyce Olsen and Mrs. Ruby Olsen, the latter fixing the time as five to ten minutes after the accident. The witness Gilbert heard Perkins state at the place of the accident two or three minutes after it occurred: "I don't know where the car came from." No objection was made by defendant Pacific Greyhound Lines that the testimony given by Joyce Olsen, who first testified, was not binding on it. When Mr. Olsen testified concerning Perkins' statement made at the scene of the accident the following occurred. "Mr. Crowley: (counsel for defendants) Now just a minute. What was said there is hearsay as far as the Greyhound is concerned. Mr. Hoey: (one of plaintiff's counsel) Well, as far as the defendant Perkins was concerned he was there. The Court: It would be binding on Mr. Perkins. It wouldn't be binding on the Greyhound. Mr. Hoey: No." And later concerning the statement made at Olsen's home: "Mr. Crowley: Now we object to that as hearsay insofar as the Greyhound is concerned, Your Honor. The Court: The jurors are instructed that this conversation is not binding in any way upon the defendant Pacific Greyhound Lines and is only to be considered by you in connection with establishing any responsibility on the part of the defendant Perkins, any liability on the part of the defendant Perkins." A like objection was made to Mrs. Olsen's testimony and in addition the following occurred: "Mr. Dam (one of the counsel for plaintiffs) If Your Honor please, I have been thinking of that same objection over night and there are two propositions that I would like to state to Your Honor very briefly. Now whether or not a statement by the driver of the bus would be what is technically called in the law an admission against interest is one thing and whether or not any statement made by the driver of the bus would be evidence upon the question of whether or not he was guilty of negligence or as tending to show negligence on his part is another thing. Now taking up the second part first, inasmuch as the corporation . . .

MR. CROWLEY: (interrupting) Well, Your Honor, if there is going to be any legal discussion I think we could hasten it by having reference to the books and it wouldn't take us a minute. THE COURT: Yes. I was going to suggest if you have any authorities you want to present to me get it to me during the noon hour and the other side will do the same and *in the meantime I will make the same ruling I did yesterday and instruct the jury that any admissions made, or statements made by the driver of the automobile . . . of the bus, to Mrs. Olsen is not binding upon the Pacific Greyhound Lines but is binding upon himself.* MR. DAM: That's merely as an admission against interests. THE COURT: Well, it is binding on him for all purposes and *it is not binding on the Pacific Greyhound Lines.* Now if you can show me an authority to the contrary, then I can instruct the jury to the contrary. Proceed." Later to a similar objection to the testimony of Mr. Gilbert the court twice made the same remark with regard to it not being binding on Pacific Greyhound Lines. Finally, in the instructions to the jury the court stated: "Any evidence here about *any* statements, if any, made by the driver, Mr. Perkins, to *anyone after the accident, was not admitted against,* and is *in no way related to or binding on the Pacific Greyhound Lines."* (Emphasis added.)

The foregoing evidence was clearly relevant and material. It had a direct and substantial bearing upon the negligence of defendant Perkins. It indicated that he was not keeping a proper lookout. It was undoubtedly admissible against Perkins inasmuch as it was an admission or declaration against interest. Admissions of a party to an action are admissible under an exception to the hearsay rule. (10 Cal.Jur. 1055 et seq.) They would also be admissible against Perkins for purposes of impeachment.

Those statements of Perkins are also admissible against him under the spontaneous declarations rule which is an exception to the rule against hearsay. The rule is stated in *Showalter* v. *Western Pacific R. R. Co.,* 16 Cal.2d 460, 465 [106 P.2d 895]:

". . . declarations which are voluntary and spontaneous and made so near the time of the princip*le* act as to preclude the idea of deliberate design, though not precisely concurrent in point of time therewith, are regarded as contemporaneous

and admissible.'' Statements falling within that rule are admissible although self-serving. (*Showalter* v. *Western Pacific R. R. Co., supra.*) ■ Defendants argue however that such statements are not binding upon Pacific Greyhound Lines because they are outside the scope of authority of the employee, Perkins. But the existence of the employer-employee relation is immaterial. Under the circumstances here involved it neither enlarges nor limits the field of admissibility. Declarations coming within the rule are not dependent for their admissibility on the theory of an admission of an agent being binding upon his principal. They are admissible because of the probability of their trustworthiness. Hence, a spontaneous declaration made by an employee may be admissible against his employer as an exception to the hearsay rule pursuant to the rule under discussion separate and apart from the question of whether it was made in the scope of employment. There may be situations where they are admissible under both theories or under only one or the other. As pointed out by Mr. Wigmore (VI Wigmore on Evidence (3d ed.) § 1756a), in quoting from the dissenting opinion in *Snipes* v. *Augusta-Aiken Ry. & Electric Corporation,* 151 S.C. 391 [149 S.E. 111, 115]:

''There is quite a good deal of confusion of thought and lack of discrimination manifest in the treatment of the subject of the admissibility of declarations of an agent. The lack of discrimination and consequent confusion of thought is demonstrated by the failure to differentiate between the declarations of an agent which are part of the *res gestae* and those declarations which were made *in the course of his employment,* and while the matter in controversy was actually pending. *The declarations of an agent, which are shown to have been a part of the res gestae, are admitted, not because he was an agent, but because they come within the class of excepted hearsay evidence which fulfills the requirements of the res gestae rule; the declarations of one not an agent would be received under the same conditions. The declarations of an agent made within the course of his employment and while the matter in controversy was pending, are admitted, not because they were made as a part of the res gestae, but because they were made under the circumstances stated.* They would be received weeks or months after the episode inquired into, provided that they were made under those circumstances.

They may utterly fail of complying with the rule of res gestae, and still be admissible upon the entirely different foundation. It is misleading and incorrect, manifestly, to hold that, before the declarations of an agent can be received, they must be shown to have been both a part of the res gestae and within the course of his employment. They may have been either or both, and admissible for that reason.'' (Emphasis added.) (See also IV Wigmore on Evidence (3d ed.) § 1078; Rest., Agency, § 289.)

Reference is made to *Gorzeman* v. *Artz*, 13 Cal.App. 2d 660 [57 P.2d 550]; *Bodholdt* v. *Garrett*, 122 Cal.App. 566 [10 P.2d 533]; *Shaver* v. *United Parcel Service*, 90 Cal.App. 764 [266 P. 606]; *Silveira* v. *Iversen*, 128 Cal. 187 [60 P. 687]; *Froeming* v. *Stockton El. R. R. Co.*, 171 Cal. 401 [153 P. 712, Ann.Cas. 1918B 408]; and *Kimic* v. *San Jose etc. Ry. Co.*, 156 Cal. 379 [104 P. 986]. The Gorzeman, Bodholdt and Shaver cases must be deemed to have been impliedly overruled by this court in *Showalter* v. *Western Pacific R. R. Co., supra*. They proceed in part on the theory that the statements to come within the rule must be contemporaneous with the event and not after it. The Silveira case confuses the rule here involved and the "verbal acts" rule. (See discussion, *Showalter* v. *Western Pacific R. R. Co., supra*, at p. 468.) The Froeming and Kimic cases are subject to like criticism.

Defendants seek to distinguish *Showalter* v. *Western Pacific R. R. Co., supra*, on the ground that here there was other evidence of the conduct of decedent while in that case there was none. We fail to see how that makes any difference. Perkins' statement goes to his conduct not the decedent's. We do not recognize as a limitation on the rule that the declaration must be the only evidence on the subject.

In the instant case it is plain from the record that the statements of Perkins fell within the spontaneous declaration rule. They were made near the time of the accident. They were made by a participant who was the driver of an automobile that had just collided with and badly damaged another vehicle. He had looked at decedent's vehicle and found decedent slumped over the steering wheel apparently dead. Certainly the statements were made under the stress of excitement and emotional upset which would accompany such an event, and when we also consider that they were against the declarant's interest, they are peculiarly imbued

with a trustworthy character. While some of the statements were made as long as fifteen to twenty minutes after the collision, they were virtually the same as the earlier statements and for that reason the time element as to those statements is not important in this case. Defendants refer to evidence that after the collision Perkins assisted two minor passengers in the bus who had been thrown from their seats by the impact as showing solicitation for the condition of the passengers in the bus, and also evidence that he flagged down a car for the purpose of having the police notified. But we are of the opinion that the very occurrence of itself created a situation which as a matter of law satisfied the requirements of the rule.

It is true that as expressed in *Showalter* v. *Western Pacific R. R. Co., supra,* ''there is necessarily some element of discretion in the trial court'' with regard to whether or not the declarations come within the rule and are therefore admissible, but the court clearly abused its discretion here. The only reasonable conclusion from the circumstances established is that there was a sufficiently startling occurrence to produce nervous excitement, and that the declarations were made in the course thereof. This conclusion is fortified by the circumstance that the statements were against the declarant's interest. (*Martin* v. *City of Corsicana,* (Tex.Civ.App.) 130 S.W. 2d 405.)

Defendants assert that counsel for plaintiffs consented to the ruling that the admissibility of Perkins' declarations be limited to him, urging that such was the express statement of attorney Hoey, and thus waived any claim of error. However, from the conduct of defendants' counsel in making his objections to the evidence, and the ruling of the court as seen from the above-quoted excerpts from the record, we do not believe that a waiver occurred or that the court or counsel so understood it.

This brings us to defendants' contention that the error, if any, was not prejudicial; that that conclusion must be drawn from the fact that the verdict was in favor of both defendant employee and defendant employer, indicating that the jury even though permitted to consider the evidence of Perkins' declarations as against him, still chose to find in his favor. In disposing of this contention several pertinent factors must be considered: Plaintiffs' allegation in their complaint that the collision occurred while Perkins was driving the bus in

the scope of his employment was admitted by defendants. Hence, there was no issue on that subject. The court, in addition to instructing the jury that the evidence of Perkins' declarations were not binding on defendant Pacific Greyhound Lines, also gave instructions that: "It is admitted by the written answer of the defendants . . . that . . . James C Perkins, was a motor stage driver for the defendant, Pacific Greyhound Lines, a corporation, and that, at all times mentioned in the complaint of plaintiffs, said Perkins was acting within the course and scope of his employment as a motor stage driver for said corporation. In view of that admission in the pleadings in this action, *you are instructed that if you find any negligence on the part of defendant, Perkins, in the operation of a Greyhound stage, or bus, belonging to said corporation, on said day, such negligence is also the negligence of said corporation, Pacific Greyhound Lines.*" Only two forms of verdict were given to the jury, one for the plaintiffs against both defendants and the other for both defendants, the court commenting: "There have been prepared for your convenience and use, two forms of verdict *which under the law it is possible for you to return in the case now on trial.* These forms will be handed to you by the clerk when you retire. They have no significance in and of themselves and are not to be considered by you for any purpose other than as a convenience for your use, having been prepared only for the purpose of saving you labor when you have finally reached a verdict. When you have reached your verdict, your foreman will sign the verdict that you have found and it will then be your duty to return the same to the court.

"If under the facts of the case and the instructions given you you desire to render a verdict for the plaintiffs you will use the form of verdict the body of which reads, 'We, the jury in this case, find for the plaintiffs,' and assess their damages against the defendants in the sum of blank dollars. You will fill in that blank the amount of damages that you award, have that verdict signed by your foreman and disregard the other form of verdict.

"On the other hand if under the facts and the instructions you desire to render a verdict for the defendants you will use the form of verdict the body of which reads, 'We, the jury in this case, find for the defendants;' disregard the other form

of verdict; have this form signed by your foreman and come into Court.''

The declarations of Perkins were important and vital evidence of negligence, one of the important elements of plaintiffs' case. True they introduced other evidence of negligence, but by reason of the death of decedent, the other participant in the accident, the one who would be best able to testify about it, was not available. On the other hand Perkins, the driver of the bus was available and testified in detail. He denied making the statements. In order to meet such direct evidence against them, plaintiffs were peculiarly dependent upon evidence of his declarations, which, we have seen, had a high probability of trustworthiness. Under those circumstances the importance of the evidence was sufficient to make its exclusion prejudicial. The instruction to the jury that if Perkins was negligent then both were liable followed by the instruction that the declarations of Perkins were in no way related to and not binding on Pacific Greyhound Lines coupled with the forms of verdict would be confusing and misleading to the jury. The last instruction and forms of verdict may well have led them to believe that the declarations of Perkins could not be considered by them as to either defendant. They may have concluded that they would not hold Pacific Greyhound Lines because, without Perkins' declarations, there was no evidence of negligence, and that if they could not hold that defendant, they could not find Perkins liable because they were not satisfied with the evidence of negligence, notwithstanding the earlier instruction that the former was liable for the latter's negligence. We think it is obvious that the jury was given such hopelessly conflicting instructions that the error in excluding the declarations as against Pacific Greyhound Lines was prejudicial. Hence, it is no answer to the claim of prejudice that the jury found in favor of Perkins as well as his employer. Defendants cite *Gorzeman* v. *Artz, supra*. That case holds that where an employer and employee are joined as defendants in an action for damages caused by the employee's negligence, the employer's liability being based solely on the doctrine of *respondeat superior*, and the employer admits that his employee was acting in the scope of his employment, a spontaneous declaration by the employee showing negligence, while ordinarily not binding on the employer,

may nevertheless support a judgment against both the employer and employee. As heretofore stated that case was overruled by *Showalter* v. *Western Pacific R. R. Co., supra,* on the point that such declarations were not admissible against the employer, hence, the result reached in the case (affirmance of the judgment) was correct and the conclusion that admissions of an employee other than spontaneous declarations, outside the scope of employment, while not binding on the employer would support a judgment against him, was not necessary to the decision.

 Plaintiffs did not waive the error by failing to request that the jury be instructed that Perkins' declarations were admissible against Pacific Greyhound Lines. It would have been idle for them to have done so after the court had repeatedly instructed the jury to the contrary during the trial when the evidence was introduced. Moreover, the rule stated in *Colgrove* v. *Lompoc etc. Club,* 51 Cal.App.2d 18, 24 [124 P.2d 128], is applicable:

"If the law applicable to the facts of a case is stated correctly in a general charge to the jury, a party may not, in the absence of a request for a more specific or elaborate instruction, complain that a more specific or elaborate instruction should have been given. (*Townsend* v. *Butterfield* (1914), 168 Cal. 564, at 569 [143 P. 760]; *Ohran* v. *County of Yolo* (1940), 40 Cal.App.2d 298, at 307 [104 P.2d 700]; 24 Cal. Jur. 796.) In this case, however, the instructions as to the duty owing to a licensee injured by active negligence were erroneous, and plaintiff is not precluded from asserting that error was committed in instructions which were given, even though he did not request a proper instruction."

Other errors are claimed by plaintiffs but in view of the conclusion we have reached they need not be discussed.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Goodell, J. pro tem., concurred.

SCHAUER, J.—I dissent. The reversal is based essentially on the holding that it was prejudicial error for the trial court to instruct the jury that the admissions or declarations against interest assertedly made by the bus driver Perkins are "not binding in any way upon the defendant Pacific Greyhound

Lines and is [are] only to be considered by you in connection with establishing any responsibility on the part of the defendant Perkins.'' This instruction in slightly varying language was repeated several times during the trial. When the subject was first mentioned one of plaintiffs' counsel agreed with the ruling. Later the matter was discussed again and the court stated to counsel for plaintiffs, ''Now if you can show me an authority to the contrary, then I can instruct the jury to the contrary.'' No authority, it seems, was presented and the court in its formal instructions at the close of the trial said, ''Any evidence here about any statements, if any, made by the driver, Mr. Perkins, to anyone after the accident, was not admitted against, and is in no way related to or binding on the Pacific Greyhound Lines.'' Such instruction was erroneous not only for the reasons elucidated by Mr. Justice Carter but also because, regardless of the doctrine of *respondeat superior,* the defendant Pacific Greyhound Lines was liable (at least to the extent of $5,000) under the provisions of section 402 of the Vehicle Code if the driver, Perkins, was liable. Nevertheless, for the reasons hereinafter stated, I am not persuaded that the giving of such instruction, under the circumstances shown, was prejudicial to plaintiffs.

The court also instructed the jury that ''It is admitted by the written answer of the defendants . . . that . . . Perkins was acting within the course and scope of his employment as a motor stage driver for said corporation. In view of that admission . . . you are instructed that if you find any negligence on the part of the defendant, Perkins . . . such negligence is also the negligence of said corporation, Pacific Greyhound Lines.''

In respect to the defendant Perkins the trial court made it very clear that the evidence as to his statements was admissible against him. It told the jury that ''any admissions made, or statements made by the driver of the automobile . . . of the bus, to Mrs. Olsen is not binding upon the Pacific Greyhound Lines *but is binding upon himself''*; that the statement made at the scene of the accident *''would be binding on Mr. Perkins'';* that ''this conversation is not binding in any way upon the defendant Pacific Greyhound Lines and *is only to be considered by you in connection with establishing any responsibility on the part of the defendant Perkins.''* (Italics added.)

It is argued in the majority opinion that the action of the trial court in giving to the jury only two forms of verdict— one for the plaintiffs against both defendants and the other for both defendants against the plaintiffs—contributed to making the erroneous instructions prejudicial; that separate forms as to the defendants Perkins and Pacific Greyhound Lines should have been furnished. But it is obvious that no verdict could properly have been returned as against the corporate defendant unless one was also found against Perkins and that if any verdict was rendered against Perkins there must also have been one against the defendant corporation. It is undisputed in the record that Perkins was an authorized driver for the Pacific Greyhound Lines, the owner of the bus. Hence, even if the jury believed that the evidence against Perkins was sufficient, but was so only by reason of his extra-judicial statements, and concluded that plaintiffs were not barred from recovery by reason of contributory negligence of the decedent, they were bound, under the provisions of section 402 of the Vehicle Code, to return a verdict against the Pacific Greyhound Lines as well as against Perkins.

The statements assertedly made by Perkins were received in evidence. They were considered by the jury. But the verdict was returned in favor of the defendants. The evidence shows that plaintiffs' decedent made a left turn directly into the path of the oncoming bus. It tends strongly, if not over-whelmingly, to establish contributory negligence. Section 4½ of article VI of the Constitution directs that ''No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence . . ., unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'' In this case, after an examination of the entire cause, I am not of the opinion that there has been a miscarriage of justice. It seems to me more probable that the jury concluded that the decedent was guilty of contributory negligence than that they found in favor of both defendants solely because they were erroneously told that the asserted statements of Perkins were binding on him but were not ''related in any way'' to, or binding on, the corporate

defendant. Accordingly, it is my opinion that the judgment should be affirmed.

Edmonds, J., concurred.

Respondents' petition for a rehearing was denied July 19, 1945. Edmonds, J., and Schauer, J., voted for a rehearing.