[Civ. No. 13017. First Dist., Div. Two. June 5, 1946.]

EVA GOUZEA, Appellant, v. PACIFIC GREYHOUND LINES (a Corporation) et al., Respondents.

Shirley, Robb & Saroyan for Appellant.

Cooley, Crowley, Gaither & Dana for Respondents.

NOURSE, P. J.—The plaintiff sued Mrs. Suzanne Ossiander, Peter Boncheff, Pacific Greyhound Lines, a corporation, and its employee Fred Lawrence for injuries arising from a collision of motor vehicles on the public highway. At the close of plaintiff's case the court granted a nonsuit as to Pacific Greyhound and Lawrence, and, upon stipulation of the parties for reasons not disclosed in the record, a mistrial was granted as to all other defendants. The plaintiff has appealed from the order granting the nonsuit.

Two grounds are advanced by appellant: (1) That the evidence of negligence was sufficient to take the case to the jury, and (2) that the trial court erred in restricting the testimony regarding a statement made by Mrs. Ossiander following the collision.

Viewing the evidence in the light most favorable to appellant we find that it is singularly without substantial conflict insofar as it relates to the question of respondents' negligence. Appellant was riding on the rear seat of a motorcycle operated by James Wheeler, who is not a party to the action. They were traveling north on the main highway running from San Rafael to Petaluma. At a point about three miles north of San Rafael the highway was divided into three lanes with the outer lanes for ordinary traffic and the center lane for passing only. As the motorcycle approached this point it was preceded by two passenger cars being driven in the same direction in the outer northbound lane—a Nash driven by Mr. Falconer followed closely by a Buick driven by Mr. Boncheff. Wheeler turned into the middle lane to pass the Buick. At about the same time the Buick pulled into the middle lane to pass the Nash. Mrs. Ossiander was traveling south in a green DeSoto on the outer, or westerly lane, and at about the same time pulled into the middle lane ostensibly to pass the Greyhound bus. This bus had stopped to the west of the pavement at a designated stopping station for passengers and was moving slowly into the southbound lane. After all the northbound vehicles had passed the bus, and at a time when the Buick was even with the Nash, the driver of the Buick noticed the green car turning into the middle lane and he suddenly slowed his car. Wheeler was close behind the Buick and turned further into the center lane to avoid striking it. To avoid the approaching DeSoto, Wheeler turned to his right and was wedged between the Buick and the DeSoto. Appellant was thrown from the motorcycle and suffered severe injuries.

The undisputed evidence as to the actions of the driver of the Greyhound bus is that after stopping off the highway to take on passengers it moved slowly at an angle onto the outer lane of the paved highway at a time when the DeSoto was from six to nine hundred feet in the rear and when there was no other traffic in that part of the highway. Only four witnesses testified as to the operations of the bus. The appellant testified that when the motorcycle was about 300 feet south of the bus, the bus was moving at a gradual angle southerly the front wheels coming onto the pavement. Wheeler testified that as he was 300 feet south of the culvert he first saw the bus and at the time he passed it "the front wheels were coming onto the highway, just about where the rear wheels were coming onto the paved portion." He also testified that it was entering the paved portion slowly and at a gradual angle, that "he did not cut short on the highway." When he first saw the green DeSoto it was 1200 feet to the north, "up near where the four lane highway is." This spot was shown to be 900 feet north of the culvert. The defendant Ossiander testified that she saw the bus enter the traffic lane when she was six hundred to a thousand feet to the rear. She continued in the outer lane observing the moving bus at all times until she was about 200 feet to the rear when she swerved into the middle lane with the intention of passing it. It was this movement which caused the collision. All these witnesses testified that they did not see the bus driver give an arm signal on starting. Lawrence, the fourth witness, testified in conflict with some of the witnesses but this conflict is unimportant and may be disregarded as well as other conflicting testimony which he gave since the propriety of the order of nonsuit must be determined on the evidence favorable to the appellant. Assuming that no starting signal was given the only person to whom it should have been given saw the bus start and saw it moving ahead of her in the regular traffic lane and would have learned nothing more if a signal had been given. All the other vehicles had passed the bus before the collisions occurred and the movement of the bus had no relation to the movements of any one of the vehicles which were going north.

It is appellant's contention that the movement of the bus onto the highway was not made with "reasonable safety" as required by sections 543 and 544 of the Vehicle Code and that from this an inference of negligence might arise. The argument is based upon this incorrect statement of the record:

"When the bus pulled onto the highway and into the west lane the Ossiander DeSoto was only 70 to 100 feet to the rear of the bus." Sixteen specific references to the reporter's transcript are made, no one of which remotely supports this statement. To the contrary, the undisputed evidence is that "when the bus pulled onto the highway" the DeSoto was from six hundred to a thousand feet to the rear. It is also undisputed that Mrs. Ossiander pulled into the center lane, not to avoid crashing into the bus, but to increase her speed and pass it. Mrs. Ossiander testified that she first saw the bus moving slowly into the outer lane as she came around the curve of the hill approximately one thousand feet to the rear. She required no arm signal to tell her that the bus was doing just what she observed with her eyes.

There is a marked distinction between the facts of this case and *Pewitt* v. *Riley,* 27 Cal.2d 310 [163 P.2d 873]. In the latter case defendant, at 2:25 a.m., suddenly and without warning started to move his truck and trailer across a main highway and completely blocked the three lanes of traffic. Plaintiff was driving a tractor and trailer south around a curve and down grade and did not observe the movement of defendant's truck until it was too late to stop. Here all the witnesses were in accord that, after Mrs. Ossiander observed the bus in movement upon the western lane she had ample time to slow her speed and continue her course behind it. There is here no possible inference of negligence which could be deduced from the evidence of the operations of the bus and the nonsuit was properly granted as to these respondents.

Little need be said as to the second ground urged by appellant—that the declarations made by Mrs. Ossiander were admissible under the res gestae rule. Appellant first refers to the testimony of Wheeler that immediately following the collision she came to him and said: "I am terribly sorry, that bus run in front of me." Appellant states that, "This testimony . . . was not objected to by respondents nor did they make any motion to strike it from the record." The reporter's transcript discloses that as the witness Wheeler was under examination the following occurred:

"Q. (by counsel for appellant) Did you recognize the lady driving that green DeSoto? A. No, sir, I did not. Afterwards I took the motorcycle off to the side of the road and I laid it down; and I laid down beside it. A woman came over and she said, 'I am terribly sorry, that bus run in front of me.'

"Mr. Hoge: I ask that that go out.

"Mr. Shirley: My only question at the moment is: Q. Did you ever eventually find out that Mrs. Ossiander was driving the southbound DeSoto? A. Yes. Q. And you did talk to her later on? A. Yes."

Counsel thus consented that the irresponsive answer should go out and made no effort to introduce the testimony under the res gestae rule. As stated in *Lane* v. *Pacific Greyhound Lines*, 26 Cal.2d 575, 581, 582 [160 P.2d 21] and *Showalter* v. *Western Pacific R. R. Co.*, 16 Cal.2d 460, 465, 469 [106 P.2d 895], the trial court has some discretion with regard to whether such declarations come within the rule, but this discretion cannot be exercised when the party makes no effort to come within the rule. Counsel for appellant thereafter concurred in the ruling that this statement was hearsay as to all parties other than Mrs. Ossiander and the question and answer were repeated with that limitation.

Thereafter counsel for appellant interrogated the highway officer regarding a conversation he had with Mrs. Ossiander after the collision. Relying upon the rule of the Showalter and Lane cases counsel argues that this conversation was admissible under the res gestae rule. But the record presents a different situation than that of the cited cases. The testimony was not offered as a spontaneous utterance or as a part of the res gestae. It was offered as impeachment of Mrs. Ossiander and was so limited by the ruling of the trial judge. Counsel for appellant made an offer to prove that "Mrs. Ossiander made certain inconsistent statements; that she first told the officer, in response to his question, 'What happened,' 'I was in the east lane all of the time. The motorcycle came over and hit me'—'I was in the west lane all of the time and the motorcycle came over and hit me.' We will show that the officer had heard that she had turned into the middle lane, so he said, 'Well, if that is correct, why did you swing into the middle lane?' So then she changed her testimony and said, 'Well, I had to swerve into the middle lane because the bus pulled out in front of me.'" "That admission is against her interest." In limiting the testimony to Mrs. Ossiander the trial judge stated to counsel: "Well, I would like to have you make more broad your grounds to it. In other words, lay the foundation . . . so I can see just exactly how to rule on it under that case." This was not done. Thereafter the officer was permitted to repeat the statement which he took from Mrs. Ossiander concerning the collision. The time this statement was made is not clear. The accident occurred at 2:10 p.m. The officer

arrived at the scene soon after. He first testified that he took Mrs. Ossiander's statement about 20 minutes after the ambulance left. He then referred to his notes made at the time which showed that the statement was made at 3:10 p.m. Another witness testified that he heard the statement made to the officer about 20 minutes after the ambulance left. The witnesses were uncertain as to when the ambulance left, but estimates were given that it was from 15 to 20 minutes after the accident. During this time, and before the statement was made to the officer, Mrs. Ossiander had had several conversations with others involved in the collisions and arguments were indulged in relating to the fault or negligence of the several parties. The statement as repeated by the highway officer reads: "The first story she told me, she was in the south bound lane on the west side of the highway; that the motorcycle had come over into the lane. I asked her how the accident could happen if she was in the southbound lane. And after talking to her for a time she said that as the bus started off of the highway she pulled over into the center lane. I asked her then if the center lane was clear. She said it was, but as she got into it she saw a car venture out into the middle lane. As the car ventured out, the motorcycle came around the red car and she swerved back into the southbound lane."

In the foregoing we find not a spontaneous statement, but a coolly prepared self-serving declaration made after full opportunity to study the circumstances of the collision. It was a statement forced out of Mrs. Ossiander by the officer after she had first insisted that she had not left the outside lane, and it was not a spontaneous statement but an attempted explanation of a story which she felt compelled to change. An inconsistent statement made after a change from the original statement lacks on its face the element of spontaneity which is the foundation of the res gestae exception. The second story was obviously not made under the emotional excitement of the accident. If counsel had plainly stated to the trial judge that he was seeking admission of the statement as to all defendants as a part of the res gestae it might not have been an abuse of discretion to admit it when made under those circumstances. But it is apparent from reading the record that counsel did not make his position clear. The res gestae rule is a salutary one when properly applied for the purpose of bringing out the truth of the circumstances, but it is not to be extended to statements prepared after long deliberation which

tend only to excuse the fault of the speaker and to cast blame on an absent party. But in any event, when testimony which is obviously hearsay is offered under the res gestae rule the proper foundation should be laid and the trial judge should be so informed of the theory under which it is offered that he may make an appropriate ruling.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 5, 1946, and appellant's petition for a hearing by the Supreme Court was denied August 3, 1946. Carter, J., voted for a hearing.