[Crim. No. 3101. Third Dist. Oct. 13, 1960.]

THE PEOPLE, Respondent, v. JAMES HASKELL, Appellant.

Donald R. Fretz, Public Defender, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and C. Michael Gianola, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—James Haskell was charged by information with the crime of felony drunk driving in violation of section 23101 of the Vehicle Code, it being alleged that while under the influence of intoxicating liquor he drove a motor vehicle upon a public highway and caused bodily injury to Doris Eloise Perryman. He was found guilty by a jury, and after his motion for a new trial was denied, judgment was pronounced. He has appealed from the judgment and from the order denying his motion for a new trial.

It appears from the record that at about 4 p.m. on December 5, 1959, on Palm Avenue in Merced County, a blue Chevrolet sedan struck Mrs. Perryman and inflicted severe injuries upon her. Appellant and Bruce Pratt were in the Chevrolet and appellant was accused of being the driver. Pratt was the owner of the Chevrolet but appellant had been driving it during the greater portion of the time between 10:30 a.m. and the time of the accident. Both appellant and Pratt commenced drinking intoxicating liquor in the morning and continued doing so during the day, but appellant imbibed more heavily than Pratt.

No eyewitness except Pratt testified as to who was driving the Chevrolet at the time of the accident and he testified that appellant was driving. Highway Patrol Officer Kirkendall who arrived at the scene of the accident about 15 minutes after it occurred testified that appellant stated as he was being taken to the ambulance: "I don't want to see the woman I might have killed"; and that when he was in the ambulance he stated: "Hell, yes, I am drunk, take me in, it is my fault." The officer also testified that he asked appellant if he was the driver and appellant said, "Yes." He further testified that appellant said, ". . . I was driving north on Palm approximately 60 to 65 miles an hour. The other vehicle, vehicle two —which would be this vehicle—backed out in front of me. I was almost 30 or 40 feet down the road. I hit the brakes and went into a slide and when we hit, I was thrown out."

Another witness testified that when the officer was trying to get appellant into the ambulance appellant said that "he didn't want to go near a woman that he might have killed, and then when Mrs. Perryman was moaning, and said they were

drunk—she said she saw them, and then Mr. Haskell said, 'Of course I am drunk, lady. Do you think I would have hit you if I were not drunk?' '' A little later when Officer Kirkendall went to the hospital the defendant asked him, ''How was the lady?'' and ''Did I kill her?''

Approximately one hour after said officer left the scene of the accident, Dr. Julian, at the officer's request and with the express voluntary consent of the defendant, took a blood sample from him. This sample of blood was delivered to a state agency for analysis. The analysis was introduced in evidence and an expert testified in connection therewith that the analysis showed an alcoholic content of .17 and that a person with that alcoholic content was definitely under the influence of intoxicating liquor and would generally be unable to operate a vehicle with the care and caution of an ordinarily prudent man not under the influence of alcohol. Since this blood sample was not taken until nearly two hours had elapsed after the accident, it is reasonable to assume that the alcoholic content was considerably higher at the time of the accident as it declines with the passage of time and the oxidation of alcohol by the body.

Appellant took the stand in his own defense. He testified that he remembered nothing of what happened from the time he was at the Towler house until he woke up in the hospital some time later.

As part of his defense appellant sought to elicit testimony from his wife, Ruth Haskell, of a statement he made to her. She testified that when she arrived at the scene of the accident she saw appellant lying up against the blue Chevrolet with his head on his arm and '' [t]hen his knees got wobbly.'' She told him to lie down. She then asked him who was driving the car. Appellant answered that Bruce was. (Bruce was the other occupant.) An objection to the statement was made. The court said, ''That has to go out. . . . No, you may not bring in the oral statement of a defendant, purely a self-serving declaration. . . . [Y]ou could prove anybody innocent with evidence like this. Have him bring in a whole lot of people and have them make a statement like that. We can't receive it. Mr. Fretz: May I present argument and authorities in chambers? The Court: No, I don't want to hear it. The ruling will have to stand. Mr. Fretz: Well, if the Court please, then I desire in open court to make a statement with regard to the matter that this is within the res gestae of this

offense. THE COURT: All right, the ruling stands. I don't want to hear anymore from you on it."

Later when defense witness, Helen Alexander, was on the stand, she testified that appellant's wife arrived just as appellant was getting up, and the following appears in the record: "Q. And after he got up, then what did he do and what did she do? A. She asked him, she said, 'Who was driving,' and he said, 'Bruce.' MR. HALLFORD: There again, I think it should be disregarded entirely, these hearsay statements. They can get a thousand if they wish, and I ask the jury to disregard that remark. THE COURT: Yes, the jury has to disregard it. Can't consider it at all. MR. FRETZ: I don't intend to reargue the thing again, but I make the argument in favor of leaving this in the record just as I made it before, and on the same ground, and I have the same authorities to support it. THE COURT: Yes, it is denied."

And when defense witness Weaver was on the stand, the following occurred: "MR. FRETZ: Now if the Court please, I appreciate the matter of the Court's ruling, and for that reason I do not intend to ask this witness the questions with regard to what was said, but I do desire to have it noted for the record that I desired to ask the same questions, and that I anticipated that the Court's ruling would be the same, and for that reason I am not asking, and may I do it in that way, or does the Court wish that I ask the question and make the objection and make the ruling? THE COURT: Well, you have a ruling on the question. MR. FRETZ: Yes. THE COURT: And you want to ask the same questions of this witness? MR. FRETZ: Yes. THE COURT: The same ruling will be in this matter that was in the other case."

Appellant does not contend that the evidence was insufficient to support the judgment, but his sole contention is that the court committed reversible error in ruling that the statement of appellant to his wife, made immediately after the accident while he was in a state of shock, was not admissible and could not be considered by the jury. Appellant contends that the statement of appellant to his wife was admissible as a part of the res gestae. Respondent in reply argues that "[c]onsidering the lapse of time here involved, the drunken state of the appellant, the doubt as to whether or not the appellant even understood his wife's question, the close relationship of the appellant to the witnesses and the defendant's prior conviction of a felony, all of which were likely to weigh heavily on the conscious or subconscious mind of the appel-

lant, thus producing strong motives for fabrication and all the other attendant circumstances," the court did not abuse its discretion in excluding the testimony.

In the leading case of *Showalter* v. *Western Pacific R. R. Co.*, 16 Cal.2d 460, at page 465 et seq. [106 P.2d 895], the court said:

"Courts in general have been in considerable confusion as to the rule of *res gestae*. In this respect the courts of this state are not different. The rule which we deem to be correct was enunciated in the early case of *People* v. *Vernon*, 35 Cal. 49 [95 Am.Dec. 49]—namely, that declarations which are voluntary and spontaneous and made so near the time of the principal act as to preclude the idea of deliberate design, though not precisely concurrent in point of time therewith, are regarded as contemporaneous and admissible.

". . . . . . . . . . . .

". . . The test so laid down is whether or not the statement is made under such circumstances of physical shock or nervous excitement as preclude the likelihood of reflection and fabrication. The better view as set forth in the case of *Lloyd* v. *Boulevard Express*, 79 Cal.App. 406, at page 411 [249 P. 837], and quoted with approval in the case of *Coryell* v. *Clifford F. Reid, Inc.*, 117 Cal.App. 534, at page 536 [4 P.2d 295], is as follows:

" ' "His statements, if true, indicate that they were made before the excitement attending the accident had subsided. Questions as to the admissibility of such questions as part of the *res gestae* depend upon whether such statements are the emanations of the acts done, *before* the excitement usually incident to an accident causing great injury has subsided, or are the statements made *after* the excitement has subsided, and the witness has time to calculate a policy to be pursued. Here the statements were made at the scene of the accident, and in the presence of those suffering from its results, and in the presence of the wreckage the accident created. Again we hold that the trial court before whom the witness appeared is better prepared to pass upon the evidence upon which the admissibility of such statements depends than is an appellate court, and his ruling should not be disturbed unless he has abused his discretion. We cannot say from the evidence appearing in the record that the declarations of Mitchell were inadmissible. If the statement of the employee is spontaneous, that is, made at the time of the accident and during the excitement attending it, before the employee has time to reflect

upon the consequences of his statement, or to fabricate evidence against his employer, it is admissible against the employer." (See also 10 R.C.L. 978, and 4 R.C.L., Perm. Supp., p. 2801.)'

". . . . . . . . . . . . . .

"Professor Wigmore points out that to be admissible it is not necessary that such declarations be made precisely at the same time as the occurrence to which they relate, as is the case under the 'Verbal Act' doctrine. These declarations are admissible not because they fall without the hearsay rule, as is the case with 'verbal acts,' but because they fall within an exception to that rule. The foundation for this exception is that if the declarations are made under the immediate influence of the occurrence to which they relate, they are deemed sufficiently trustworthy to be presented to the jury. (Wigmore on Evidence, [2d ed.], §§ 1747 et seq., and cases cited.)

"The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflected and sincere expression of one's actual impressions and belief.' To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence, [2d ed.], § 1750.)

". . . . . . . . . . . . . .

"The circumstances surrounding the declarations of the decedent herein are such that we cannot say that the court erred in admitting them. The deceased had suffered a severe physical and mental shock; although the exact time between his receiving the injury and the utterance does not appear, it is apparent that the time was short; the statement was made while he was still lying midway between the trucks of the car which had run over him; the words were spoken almost in the same breath in which he said he 'was done for'; the statement related to the circumstances causing the shock; it is therefore most reasonable to suppose that the utterance was spontaneous, unreflected, and dominated by the occurrence which had just preceded it." (See also *People* v. *Vernon,*

35 Cal. 49, 51 [95 Am.Dec. 49]; *Lane* v. *Pacific Greyhound Lines,* 26 Cal.2d 575, 581-584 [160 P.2d 21]; *People* v. *Costa,* 40 Cal.2d 160 [252 P.2d 1].)

 We believe that the court erred in refusing to admit the statements made by appellant upon the sole ground that they were self-serving declarations and hearsay without considering whether they were part of the res gestae. It is clear from the record that the court would not permit appellant's counsel to argue the question of whether the statement was a part of the res gestae or to submit authorities in support of his position.

We believe that under the authorities and under the factual situation shown by the record the statements could have been admitted as part of the res gestae and that the court should have passed on its admissibility under the res gestae rule and erred in excluding the statements without doing so. Were the case a close one, we believe the error would require a reversal of the judgment and order. However the evidence in the case pointed so strongly to the guilt of appellant that we do not believe that a different result would have been probable if the statement had been admitted. The record shows, as hereinbefore set forth, that subsequent to the making of the statement which was excluded, appellant made a number of statements which were admissions that he had been the driver of the Chevrolet, and we are convinced from a careful examination of the entire record in accordance with article VI, section 4½, of the Constitution, that no miscarriage of justice has resulted.

The judgment and order are affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.